UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTHONY K. IT,

    Plaintiff,

v.   Case No. 18-cv-1289-bhl

WILLIAM DUCKERT, et al.,

    Defendants.

## DECISION AND ORDER

Plaintiff Anthony K. It is representing himself in this long-pending 42 U.S.C. §1983 case. After numerous delays, including several adjournments granted to facilitate Plaintiff and his professed inability to litigate, discovery was finally set to close on February 1, 2021. Two days after this (latest) discovery deadline, on February 3, 2021, Defendants filed their latest motion to extend discovery. Detailing the latest set of antics engaged in by Plaintiff, Defendants ask the Court to amend the scheduling order and compel discovery or, in the alternative, to dismiss the case altogether. Dkt. No. 69. Given the record of Plaintiff's latest extreme misconduct, the Court declines to reward Plaintiff by continuing this case and will instead grant the alternative relief requested and dismiss the case.

## BACKGROUND

Plaintiff filed this case more than two and a half years ago, on August 21, 2018. Dkt. No. 1. In an initial December 27, 2018 screening order, the Court allowed Plaintiff to proceed on due process, retaliation, and conditions-of-confinement claims. Dkt. No. 12. The initial complaint identified only three individual defendants by name, but the Court allowed Plaintiff to proceed

against additional unknown defendants using John Doe placeholders and directed him to substitute the defendants' actual names once he learned them in discovery. *Id.*

On May 1, 2019, Plaintiff moved to amend his complaint to name nearly twenty individual defendants plus still more unknown John Does. Dkt. No. 22. In a May 28, 2019 order, the Court granted Plaintiff's motion to amend and, screening the amended complaint, allowed Plaintiff to proceed on due process claims against five named defendants, retaliation claims against four named defendants, and conditions-of-confinement claims against 14 named defendants. Dkt. No. 23. The Court again allowed Plaintiff additional time to take discovery before naming individuals in place of the John Does. A few weeks later, on June 19, 2019, the Court allowed Plaintiff to substitute four individuals for the Doe placeholders. Dkt. No. 26.

On September 19, 2019, Defendants responded to the amended complaint with a motion to dismiss based on Plaintiff's failure to exhaust his administrative remedies and his failure to state claims on which relief could be granted. Dkt. No. 34. Based on the recommendation of Magistrate Judge Nancy Joseph, on December 16, 2019, the Court granted in part and denied in part the motion. Dkt. No. 41. The Court dismissed thirteen defendants and the conditions of confinement claim but allowed Plaintiff to continue with his due process and retaliation claims. Dkt. No. 42. The Court set a discovery deadline of May 1, 2020, and a dispositive motion deadline of June 1, 2020.

On April 15, 2020, Defendants moved to extend the discovery and dispositive motion deadlines by sixty days. Dkt. No. 48. They informed the Court that Plaintiff was scheduled to be released from prison at the end of June, and they preferred to depose him in person, if possible. Dkt. No. 48. Defendants also moved to depose Plaintiff remotely, if necessary. The Court granted the motion and extended both the discovery and dispositive motion deadlines by two months.

On July 9, 2020, Defendants again asked the Court to amend the scheduling order, and to compel discovery, but this time the request was based on Plaintiff's conduct. Dkt. No. 58. Defendants explained that they had begun Plaintiff's video deposition on June 17, 2020. Dkt. No. 59 at 2. On that day, Plaintiff had been engaged and cooperative, answering questions coherently, substantively, and crisply for about four hours. *Id.* at 3. The deposition had to be adjourned, however, because Plaintiff's institution needed to use the interview room where the deposition was being conducted. *Id.* The parties attempted to complete the deposition on June 22, 2020, and, at least initially, Plaintiff behaved himself properly. For about forty-five minutes, he responded "to questions cogently and with apparent full comprehension." *Id.* Then, however, Plaintiff abruptly noted that he was not in complete control of his responses and that he would not be able to participate in the deposition. *Id.* at 3-4. Plaintiff said he could not breathe when he talked because his air was compromised by internal instigators who were controlling his physiological function and the air around him. *Id.* at 5. Plaintiff also said that, although he "can write up anything," he "can't talk at all." *Id.* at 6. Plaintiff then refused to answer any more questions. *Id.*

As a result of Plaintiff's professed inability to proceed, Defendants asked the Court to stay the case deadlines, a motion the Court granted in a text-only order on July 10, 2020. Because Plaintiff was to have been released from prison at the end of June, the Court ordered him to update the Court with his current contact information. The Court noted that it would schedule a status conference to discuss next steps after Plaintiff confirmed his current contact information.

On July 22, 2020, Plaintiff informed the Court that he was in fact incarcerated at the Milwaukee Secure Detention Facility. Dkt. No. 62. On that same day, he also asked the Court to amend the scheduling order, "past the end of 2020," citing a "global economic health threat" and

3

his own "debilitating psychiatric condition." Dkt. No. 63. He stated he "would need until January 2021 to regain his ability to litigate this case…."

In response, Magistrate Judge Joseph, who was handling pretrial matters in the case, scheduled a status conference via Zoom for August 20, 2020. The hearing did not take place, however, because on the morning of August 20, 2020, Plaintiff's institution called the Court and reported that Plaintiff would have a difficult time participating in the hearing. The Court canceled the hearing, and the previously set deadlines remaining stayed.

A few weeks later, despite Plaintiff's professed unavailability to litigate this case, the Court became aware that Plaintiff had begun filing other lawsuits. On September 11, 2020, Plaintiff initiated *It v. Fuller*, Case No. 20-cv-1425 (E.D. Wis.). On September 28, 2020, he initiated *It v. City of Milwaukee*, Case No. 20-cv-1503 (E.D. Wis.), and *It v. Norris Adolescent Center*, Case No. 20-cv-1504 (E.D. Wis.). And, on September 30, 2020, he initiated *It v. Does*, Case No. 20-cv-1516 (E.D. Wis.). That same day, he also initiated *It v. Does*, Case No. 20-cv-908 (W.D. Wis. Sept. 30, 2020), in the Western District of Wisconsin, although the Court did not know about that case at the time.

Upon learning of these new lawsuits, on October 8, 2020, the Court ordered Plaintiff to provide an update regarding his capacity to litigate this case and to explain how he might be competent to file four new cases, yet maintain that he was not competent to litigate this lawsuit. Dkt. No. 64. The Court warned him that unjustified and unnecessary delay would not be tolerated and gave him until October 23, 2020 to file a written update. *Id.* at 2. The Court observed that Plaintiff's filing of new cases suggested that his mental health condition was no longer interfering with his capacity to proceed. *Id.*

Plaintiff failed to file a timely update. Not yet running out of patience, on November 3, 2020, the Court gave Plaintiff additional time to update the Court on his capacity to litigate the case. The Court informed him that he had one final opportunity to offer an explanation and warned that, if Plaintiff did not respond by November 20, 2020, the Court would dismiss his case for failure to prosecute. Dkt. No. 65.

On November 23, 2020, (three days after the second deadline had expired) Plaintiff informed the Court he was able to resume litigating. Dkt. No. 67. The Court then set a Zoom status conference for December 8, 2020 to discuss moving the case toward resolution. At the status conference, Defendants explained that written discovery was complete, but they wanted finally to finish Plaintiff's deposition. Plaintiff was coherent, calm, and respectful during the Zoom conference. He explained that he had other cases pending and he anticipated being transferred to a different institution. He asked the Court to set a dispositive motion deadline in March or April. The Court acceded to Plaintiff's request and set a discovery deadline of February 1, 2021 and a dispositive motion deadline of March 15, 2021.

On February 3, 2021, two days after discovery was finally set to close, Defendants filed a motion for an extension of time and to compel discovery or, in the alternative, a motion to dismiss. Dkt. No. 69. In their motion, Defendants explain that they attempted to complete Plaintiff's videoconference deposition on January 15, 2021, more than two weeks before the discovery cutoff. Dkt. No. 71 at ¶11. But Plaintiff again refused to allow them to complete the deposition. This time, Plaintiff again appeared to be cooperative and responsive at the start of the deposition; he responded cogently with full understanding of the questions asked. But the court reporter, who was also appearing remotely, had difficulty understanding some of Plaintiff's statements and asked him to repeat his answers, and, about twenty minutes into the deposition, Plaintiff became

5

frustrated. According to the transcript, Plaintiff then said to the court reporter, "You fucking with me. I'm coming for you. You hear me? – bitch. I'm going to murder you. I'm going to murder your kids." Dkt. No. 71-2 at 14. Plaintiff then threw a chair at the computer monitor and said, "The entire police force will be killed. How about that, bitch?" *Id.* Corrections officers entered the interview room and ended the deposition. Defendants explain that officers restrained Plaintiff, placed a spit mask on him, and removed him from the room. Dkt. No. 71 at ¶16. Defendants were unable to reschedule the deposition before the February 1 discovery deadline.

## ANALYSIS

The Court agrees with Defendants that it is "time to consider whether Plaintiff's lawsuit…ought, at this stage, to be dismissed." Dkt. No. 70. As the lengthy Background section of this Order make clear, Defendants and the Court have made significant efforts to allow Plaintiff to litigate his claims and have tried to accommodate his mental health needs and requests for additional time when he believed those needs required delay. Defendants have attempted to take Plaintiff's deposition three times and have patiently put up with numerous delays occasioned by Plaintiff's conduct. The Court has tried to balance Plaintiff's needs and Defendants' right to timely resolution of the claims against them. The Court has stayed the case entirely and granted several extensions on the scheduling order, all with the goal of allowing Plaintiff the chance to pursue his claims.

But the Court's patience is not unlimited, and neither is Plaintiff's license to use his mental health problems to engage in inappropriate behavior. At this point, Plaintiff has demonstrated that he is able to assess his capacity to litigate and can communicate with the Court about his capacity even at times when his mental health has declined. When Plaintiff asked for a stay of proceedings until he was competent to proceed, the Court has stayed the case and delayed discovery. Shortly

6

thereafter and while this case remained stayed, Plaintiff initiated four new lawsuits in this district and one new lawsuit in the Western District. Only after the Court threatened dismissal for failure to prosecute did Plaintiff respond (late) to the Court's requests for information about his ability to resume litigating this case. Plaintiff then assured the Court that "he is now able to participate in the case…." Dkt. No. 66.

The Court also believes that Plaintiff has shown the capacity to represent himself well in numerous cases. He has communicated his arguments clearly and concisely. And, when his mental health needs are *not* being addressed, he has never had trouble informing the Court that he is struggling and needs time. *See, e.g.,* Dkt. No. 63. As such, when Plaintiff informed the Court that he was ready to resume litigating, the Court took him at his word. Plaintiff's demeanor and conduct at the Zoom conference two weeks after Plaintiff said he was ready to resume litigating confirmed to the Court that Plaintiff's mental health needs were being adequately addressed and that he had the capacity to represent himself.[1]

The Court acknowledges that Plaintiff has mental health challenges, but his misconduct at the January 15, 2021 deposition is inexcusable and goes beyond the pale of acceptable conduct even for a litigant with mental health challenges. Defendants explain that, in response to a simple request that he repeat his answer, Plaintiff threw a chair at a computer monitor, twice called the court reporter a vulgar name, and threatened to kill her, her children, and the police force. Even with his mental health issues, Plaintiff is not incapable of controlling himself. He chose to respond

---

[1] Plaintiff has not asked the Court to recruit a lawyer to represent him. The Court notes that Plaintiff has demonstrated a thorough understanding of his case and is able to advocate well for himself. As he noted at his June 22 deposition, he has no problem communicating in writing. This is the Court's impression as well. Plaintiff asserted that, at that time, his problem was talking or responding to oral questions during his deposition. Counsel would not help Plaintiff with that particular challenge, nor would counsel help Plaintiff control his temper.

7

in a threatening, violent, and disruptive manner, and the Court will not allow him to engage in that type of misconduct without consequence.

"District courts have inherent authority to sanction litigants for abuse of process, up to and including dismissing the lawsuit." *Waivio v. Board of Trustees of Univ. of Ill. at Chicago*, 290 F. App'x 935, 937 (7th Cir. 2008). The Seventh Circuit has explained that the "severity of a sanction should be proportionate to the gravity of the offense." *Id.* "Considerations relevant to proportionality include the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and weakness of the case." *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019). Further, while dismissal as a sanction should be used sparingly, dismissals may be appropriate when there is a record of delay or when a plaintiff has engaged in misconduct such as making improper threats. *Waivio*, 290 F. App'x at 937 (citations omitted). As the appellate court noted, some behavior goes "beyond the bounds of what a district court could be expected to indulge." *Id.*

Plaintiff's behavior falls into that category, and the Court finds that dismissal is justified. First, Plaintiff's misconduct was egregious. In addition to delaying an already long-pending case by allowing the deadlines to remain stayed despite having regained his capacity to litigate, Plaintiff leveled violent threats against children, police officers, and a court officer who was only trying to do her job. Further, the Court considered lesser sanctions, such as a fine, but does not believe that any sanction short of dismissal will be effective. Plaintiff is indigent and already owes a significant debt to the Court; adding more to a debt that Plaintiff has no means to pay is unlikely to deter him from engaging in similar misconduct in the future. *See Donelson*, 931 F.3d at 571. Finally, the harm resulting from Plaintiff's misconduct is substantial. Parties and the Court rely on court reporters to accurately transcribe all that is said during a deposition. Creating an environment of

8

fear interferes with a court reporter's ability to do her/his job. Further, allowing Plaintiff to threaten violence without meaningful consequence will reinforce bad behavior and remove incentives for Plaintiff to conduct himself in a healthy and appropriate manner.

For these reasons, the Court finds that a sanction of dismissal is warranted. The Court will grant Defendants' request for alternative relief and will dismiss this case with prejudice.

**IT IS THEREFORE ORDERED** that Defendants' motion to amend the scheduling order and compel discovery or, in the alternative, motion to dismiss (Dkt. No. 69) is **GRANTED in part**. This case is **DISMISSED** with prejudice as a sanction for Plaintiff's extreme misconduct. The clerk's office shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 1st day of March, 2021.

BY THE COURT:

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.